# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * | | |
| HAYLEY STRICKER, | * | |
| | * | No. 18-56V |
| | * | Special Master Christian J. Moran |
| Petitioner, | * | |
| v. | * | |
| | * | Filed: January 11, 2024 |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * * * * * * * | | |

Andrew D. Downing, Downing, Allison & Jorgenson, Phoenix, AZ, for Petitioner;
Nina Ren, United States Dep't of Justice, Washington, D.C., for Respondent.

## **PUBLISHED DECISION AWARDING COSTS ON AN INTERIM BASIS**[1]

    Hayley Stricker seeks compensation for work performed by a doctor she retained, Thomas Zizic. For the reasons that follow, Ms. Stricker is awarded $60,000.

## Background

    Dr. Zizic started in the Vaccine Program before 2016. Bourche v. Sec'y of Health & Hum. Servs., No. 15-232V, 2016 WL 3545769 (Fed. Cl. Spec. Mstr. June 3, 2016). Since then, special masters have found that he has requested

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. Any changes will appear in the document posted on the website.

compensation for an unreasonable number of hours. McCall v. Sec'y of Health & Hum. Servs., No. 18-152V, 2021 WL 63401, at *5 (Fed. Cl. Spec. Mstr. Dec. 15, 2021); McElerney v. Sec'y of Health & Hum. Servs., No. 16-1540, 2020 WL 7366343, at *3 (Fed. Cl. Spec. Mstr. Nov. 2, 2020); Sicard v. Sec'y of Health & Hum. Servs., No. 16-332V, 2019 WL 6462385, at *5-6 (Fed. Cl. Spec. Mstr. Nov. 4, 2019) ("Dr. Zizic appears to have an issue with accurate time-keeping. For example, he billed 0.7 hours, or 42 minutes, to read a four-page petition, only two pages of which were substantive"); Andrews v. Sec'y of Health & Hum. Servs., No. 16-0196V, 2019 WL 3408929, at *5 (Fed. Cl. Spec. Mstr. Apr. 16, 2019) (finding "the time spent by Dr. Zizic on reviewing medical records, researching articles, and drafting his report to be inflated"). In those cases, Dr. Zizic has primarily assisted Attorney Andrew Downing.

In 2018, Mr. Downing represented Ms. Stricker. Petition, filed Jan. 11, 2018. Ms. Stricker alleged a human papillomavirus vaccine caused her to suffer systemic lupus erythematosus. Id.

In support of Ms. Stricker's claim, Dr. Zizic submitted two reports. Exhibits 37 and 75. Before a hearing, Ms. Stricker sought an award of her attorneys' fees and costs on an interim basis. Pet'r's Mot., filed October 7, 2019. Although Ms. Stricker was awarded a reasonable amount of attorneys' fees, any award for Dr. Zizic was deferred. The undersigned found that Dr. Zizic's invoices contained inaccurate information. For example, the undersigned did not accept Dr. Zizic's representation that he spent 2.7 hours reviewing a ten-page petition. First Interim Fees Decision, 2020 WL 1028901 at *4 (Fed. Cl. Feb. 6, 2020). The undersigned also did not accept Dr. Zizic's representation that he spent 6.8 hours reviewing a set of typed medical records that contained approximately 70 pages. Id. The undersigned stated that: "In a future motion for attorneys' fees and costs, Ms. Stricker may submit a revised invoice from Dr. Zizic that presents a reasonable number of hours." Id.

A hearing was held across four days in January 2022. Most of the oral testimony was about whether the human papillomavirus vaccine caused Ms. Stricker to develop systemic lupus erythematosus.

However, a small portion of the oral testimony was about Dr. Zizic's invoices and how he works as an expert witness. Preliminarily, Dr. Zizic explained what motivates him to serve as an expert. "So I want these cases and consulting that I do to be fun. I'm 82 years old. I love what I do. And I'm sure going to have fun with it." Tr. 267. This enjoyment is separate from any monetary

compensation. Dr. Zizic testified "I don't make any money from these cases personally. I give this to Johns Hopkins for a chair in rheumatology." Tr. 266.

Dr. Zizic's process of writing a report here involved several steps. As part of his engagement, Dr. Zizic attempted to determine whether the petitioner's claim had merit. According to Dr. Zizic, the 2.7 hours invoiced as "reading the petition" actually involved reading the petition, reviewing some medical records, and glancing at five or six medical articles appended to the petition. Tr. 267-69. Once Dr. Zizic agreed to proceed, he read Ms. Stricker's medical records. During this reading, he took "relatively detailed notes." Tr. 270. Dr. Zizic stated, "I will take notes [by] hand and then I will type them out myself. But I never took typing in my earlier years, so I'm sort of a two-fingered typist." Tr. 353.

Dr. Zizic also spent hours at a medical library searching for relevant medical articles. Tr. 272-73. From his queries, Dr. Zizic identified articles deserving more attention. He then wrote by hand summaries of these articles and included the time summarizing the articles on his invoice. Tr. 275-76.

A final step was writing the report. During the writing stage, Dr. Zizic communicated with Mr. Downing, the attorney retaining him. See Tr. 277.

Following Dr. Zizic's oral testimony at the hearing, Ms. Stricker again sought an award of her attorneys' fees and costs on an interim basis. Pet'r's Second Mot. for Interim Attorneys' Fees and Costs, filed Feb. 15, 2022. Quoting the First Interim Fee Decision, the Secretary noted that Ms. Stricker had not submitted a revised invoice from Dr. Zizic. Resp't's Resp., filed Feb. 24, 2022. Ms. Stricker was again awarded fees, but adjudication of Dr. Zizic's compensation was deferred. Second Interim Fees Decision, 2023 WL 2387994 (Nov. 4, 2022).

Within a week of the second decision awarding reasonable attorneys' fees, Ms. Stricker submitted a third motion. Through counsel, she declared deferring compensation for expert fees "is highly prejudicial to Petitioner, especially when this Court asks Petitioner to continue to advance expenses to experts." Pet'r's Mot. for Immediate Reimbursement of Expert Costs, filed Nov. 11, 2022, at 10.

Notwithstanding Ms. Stricker's protests, immediate adjudication was not required. Other matters have received judicial attention. For example, a decision was recently issued in Ms. Stricker's case. With the resolution of Ms. Stricker's entitlement claim accomplished, her long-standing claim for compensation for Dr. Zizic's work is ready for adjudication.

3

## Standards for Adjudicating a Reasonable Amount of Compensation for an Expert

Reasonable expert fees are determined using the lodestar method in which a reasonable hourly rate is multiplied by a reasonable number of hours. See Chevalier v. Sec'y of Health & Human Servs., No. 15-001V, 2017 WL 490426, at *3 (Fed. Cl. Spec. Mstr. Jan. 11, 2017). A reasonable hourly rate for an expert depends, in part, on the quality of the expert's work. Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 218-25 (2009).

Special masters have "wide latitude in determining the reasonableness of both attorneys' fees and costs." Hines v. Sec'y of Health & Human Servs., 22 Cl. Ct. 750, 753 (1991). They may look to their experience and judgment to reduce the number of hours billed to a level they find reasonable for the work performed. Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).

Petitioners "bear[] the burden of establishing the hours expended, the rates charged, and the expenses incurred." Wasson v. Sec'y of Health & Human Servs., 24 Cl.Ct. 482, 484 (1991), aff'd in relevant part, 988 F.2d 131 (Fed. Cir. 1993).

## Analysis

Consistent with the standards set out above, the analysis consists of two parts, a finding of a reasonable hourly rate and a finding of a reasonable number of hours.

### A Reasonable Hourly Rate

Dr. Zizic has previously been awarded $400 per hour. McCall, 2021 WL 6340187, at *5. He requests this same rate. This rate, in the past, appeared to be appropriate.

However, new information raises some questions about whether $400 is too high an hourly rate for Dr. Zizic. Dr. Zizic does not work as efficiently as other experts who frequently participate in the Vaccine Program. Examples of inefficiencies include (1) handwriting summaries of medical records and then typing a medical chronology and (2) searching for relevant articles for an extended time.

Professionals who charged by the hour should not both charge a relatively high hourly rate and charge a relatively high number of hours. See Broeckelshen v. Sec'y of Health & Hum. Servs., 102 Fed Cl. 719, 731 (2011). A relatively high

4

hourly rate implies an efficiency that should translate into a lower number of hours.

In light of Dr. Zizic's inefficiencies, some component of his request is unreasonable---either the hourly rate or the number of hours. As a mathematical matter, reducing either factor in a multiplication equation will reduce the product. Thus, for sake of continuity, Dr. Zizic's hourly rate will be kept at $400 per hour. Modifications will be made to the number of hours.

### A Reasonable Number of Hours

Dr. Zizic submitted three invoices, totaling approximately 200 hours. The undersigned has extensively studied the invoices.

The undersigned reduces time spent on reading medical records and some medical articles to a more reasonable amount of time. See Andrews, 2019 WL 3408929, at *5 (finding the rate at which Dr. Zizic reviews medical records to be "unreasonable"). The undersigned accepts the time spent drafting the report, although, arguably, the slowness in typing might merit an adjustment. See McElerney, 2020 WL 7366343, at *3 ("it appears that Dr. Zizic's additional ten hours of drafting time and 30 hours of research time were excessive and warrant a further reduction of 25%"). The undersigned accepts the time spent communicating with Mr. Downing and almost all the time spent preparing for the hearing. Based upon these estimates, the undersigned finds a reasonable number of hours to be 150. See Fox v. Vice, 563 U.S. 826, 838 (2011) (indicating that trial courts may use "rough justice" in awarding attorneys' fees).

### Computation and Commentary

A reasonable hourly rate ($400 per hour) times a reasonable number of hours (150 hours) yields $60,000. This amount is a reasonable amount of compensation. Although not dispositive, an award of $60,000 is within the same ballpark as awards to other experts who have attended multi-day hearings. See Matten v. Sec'y of Health & Hum. Servs., No. 12-155V, 2023 WL 4195481, at *4 (Fed. Cl. Spec. Mstr. May 30, 2023) (awarding an expert, who received $500 per hour, $49,675.00 for her work, including attending 16 hours of hearings); Davis v. Sec'y of Health & Hum. Servs., No. 14-978V, 2022 WL 17819161 (Fed. Cl. Spec. Mstr. Oct. 12, 2022) (awarding an expert, who received $500 per hour, $54,642.63 for his work, including attending three days of hearing).

Dr. Zizic's testimony demonstrated that he is not trying to cheat anyone by inflating his bills. Tr. 277-78. He appears to work conscientiously but rather slowly. To account for the slowness of his work, some hours have been reduced.[2]

To facilitate reimbursement for Dr. Zizic's work, the undersigned is resolving his fees now before Ms. Stricker has filed a final motion for attorney's fees and costs. But, the beneficiary of the timing of this decision is not readily apparent. In the third motion requesting an award for Dr. Zizic's work, Attorney Downing wrote: "Undersigned Counsel cannot bankroll the Vaccine Program for an indefinite period of time and carry these expert expenses for years. This Program owes undersigned Counsel for expert costs for Dr. Zizic." Pet'r's Mot. for Immediate Payment at 10. "The undersigned Counsel has been carrying the thousands of dollars in fees for Dr. Zizic for years." Id. at 11. These statements suggest that Mr. Downing has paid Dr. Zizic already.

Although the details of the contractual arrangements between Mr. Downing and Dr. Zizic have not been presented, it is difficult to understand why Dr. Zizic has required payment from Mr. Downing before Mr. Downing has received an award from the Vaccine Program. A delay in payment for Dr. Zizic's work appears not to harm Dr. Zizic's bank account. Dr. Zizic testified he does not "make any money from these cases personally." Tr. 266. Given Dr. Zizic's generosity in donating all proceeds, Dr. Zizic seems to have little urgent need for compensation.

To be sure, Dr. Zizic's philanthropy does not affect the amount of compensation. The factors that contribute to determining a reasonable amount of compensation for Dr. Zizic are a reasonable hourly rate and a reasonable number of hours. Similarly, Dr. Zizic's philanthropy did not affect the timing of this decision. The undersigned shares Mr. Downing's wish for a speedier resolution of all issues in the Vaccine Program. See Dorego v. Sec'y of Health & Human Servs., No. 14-337V, 2016 WL 1635826 at *4-5 (Fed. Cl. Spec. Mstr. April 4, 2016), disagreed with by McIntosh v. Sec'y of Health & Human Servs., 139 Fed. Cl. 238 (2018).

---

[2] Alternatively, Dr. Zizic's number of hours could have remained at approximately 200 and his hourly rate reduced to $300 per hour and the result would have still been $60,000.

## **Conclusion**

A reasonable amount of compensation for Dr. Zizic's work is $60,000. The Secretary is directed to make payment in this amount in the form of a check made payable to Ms. Stricker and her attorney, Mr. Downing.

The Clerk's Office is instructed to enter judgment in accord with this decision unless a motion for review is filed. Information about filing a motion for review, including the deadline, can be found in the Vaccine Rules, which are available on the website for the Court of Federal Claims.

**IT IS SO ORDERED.**

s/Christian J. Moran
Christian J. Moran
Special Master
